Peck, J.,
delivered the opinion of the Court.
John Whitehead, William Jones, executor of John W. Simonton; Hetty Green, executrix of Pardon C. Green, and Mary Emerson, executrix of John W. C. Fleming, by their petition, claim the sum of $114,000 for the use and occupation of the island of Key West, Florida, under orders of the Navy Department, for the period of three years and a half, to wit, from April, 1823, to October, 1826 ;
For stock appropriated to the use of the United States, and destroyed under orders of Commodore Porter, in using the island as a naval depot;
For wood consumed by fleet {beyond what compensation has been tnade for) and lumber cut and destroyed by Commodore Porter in erecting buildings and in making roads through the island for the use of the United States, and for wood destroyed in his attempts to ventilate the island, and, as he thought, improve its healthiness.
This is the language of the petitioners in stating their claim.
They further state that this claim has been several times considered by Congress, and has been more than once favorably reported.
We have examined several of these reports, and do not find in any of them a recommendation that any specific sum should be allowed the claimants. We have also examined other reports to Congress which do not favor the'claim.
While we would be disposed to pay deference to the reports of congressional committees as emanating from gentlemen of ability, yet our observations in matters of claims examined by committees do not impress us with the belief that they receive anything like the careful scrutiny they would do if the same persons were called upon to act judicially in the same investigations, especially if the test of legal evidence was invoked and applied to them.
It is asserted by the claimants that their title to the island of Key West is indisputable, and that it is evidenced by records, and has since *320 1826 been recognized by the government by purchases on its behalf of portions of the island for public use from claimants and their assignees. Of this fact there is no evidence furnished. We are referred to acts of Congress making appropriations as confirmatory of this averment, but these acts do not show that the claimants have title; the appropriations are not to them by name, even if designed to pay for purchases from them; for aught that appears, if the title was ever in them, it was long after the acts of occupation complained of.
The title was not undisputed when the government took possession.
It is insisted that the title of Simonton to the island was recommended for confirmation by the commissioners appointed to that end under the treaty with Spain of February, 1819, and was confirmed by act of Congress of May 23, 1828.
By referring to the proceedings of the commissioners, we-find that there were two claimants to the island, viz., Simonton, who represented that it contained 7,000 acres, and George Murray, who stated that it contained 8,000 acres. Bach of these claimants represented that they derived title from the same source — that is, from John P. Salas, the grantee of the Spanish government.
In their report to the Secretary of the Treasury, and by him communicated to Congress, the commissioners state that they have examined the claims and disposed of them, upon the principles exhibited, in nine classes stated in tables and numerically arranged. Number three, which is the class or table in which the claims for the island of Key West by Simonton and Murray were included, is thus commented upon, the commissioners stating that it “ comprehends claims, exceeding 3,500 acres, the titles to which wore found among the public archives of the country, and are ascertained by the commissioners to be valid Spanish grants, and reported accordingly to Congress for confirmation.”- “ Some of these grants favor the belief that the gratification of individual cupidity may have had some influence in their formation, but how far they comport with the laws of Spain, and are entitled to confirmation, the commissioners submit to the superior hnoioledge of Congress.” The report, as thus stated, is not a confirmation, but is a submission of this class of cases,>upon the facts, to Congress for its action. Class No. 3, commented upon as above, shows under appropriate headings in the table that Simonton and Murray were the then “present claimants,” not jointly but separately, each for the whole; that the grant from Spain was to “ Juan P. Salas;” that the “ date of concession or order of survey” “ was the 26th of August, 1815,” in both cases; “that the quantity of land” claimed in both cases was 7,000 *321 acres; that the concession, was by the same person; that “ the authority or royal order under which the concession was granted” was the same; that under the head of ‘‘ conditions of grant” both were represented by the word “none,” and a blank was left under the head of “occupation and cultivation” opposite the name of each claimant. This tabular statement was dated at St. Augustine,'December 31,1825.
Up to this date it is certain no title was confirmed in any person, nor does it appear that any person was occupying or cultivating the island of Key West, so far as this report represents the condition of the property. Admitting, if we could, that- any title thus reported would stand confirmed by the act of Congress of May 23, 1828, which of these claimants should receive the benefit of the confirmation ? But the act expressly declares “ that no more than the quantity of acres contained in a league square shall be confirmed within the bounds of any one grant, and no confirmation shall be effectual until all the parties in interest, under the original grant, shall file with the register and receiver of the district where the land may be situated a full and final release of all claim to the residue contained iu the grant.” If any release of the excess over a league square of the grant claimed has been filed, as is required by this law, we are not informed.
Hence, we do not discover from this record how it is that the title of Simonton to the island, which he represented as containing more than a league square, is indisputable.
It was insisted on the argument that Simonton and his associates, who claim to have been in possession of the island, could recover for use and occupation without regard to title. Without considering the right of the government to occupy the island under the treaty with Spain, it appears from the testimony of Roberts, a witness produced by claimants, who accompanied Simonton to the island in 1822, and before the government occupied it, that a Doctor Montgomery was then in possession of the island, contesting the claim of Simonton, representing Governor Geddes, of South Carolina, who, it seems, claimed under a right adverse to that of' Simonton. Roberts says that this claim of Governor Geddes was subsequently abandoned or fell through, as he understood. How. long this adverse claim existed, or when it ceased, or whether it was subsequently acquired by Simonton, is not disclosed. It may be that this adverse claim and possession was under the title of Murray, which, so far as is shown, was equal to that of Simonton.
An examination of the congressional reports, -to which we have been *322 referred, shows conclusively (and. this fact is also corroborated by Koberfcs) that the government was invited by Simonton and his associates to occupy the island. They wanted a depot established there, and looked to advantageous results in consequence. The waters in the vicinity of the island wero infested with pirates, who destroyed commerce, and deterred immigration to the island; and naval protection, if not indispensable, was at least advantageous to its occupation by the owners, whoever they might be. But whether the government was invited to occupy the island, or did so by reason of its rights under the treaty, it is not shown that these claimants are in a position, cither as owners or occupants, to recover upon this petition. It may as well be inferred that they were trespassers as that the government was.
The claim for wood and for animals .used or destroyed is so vaguely and insufficiently proved as to quantitj’', numbers, and value, that we are unable, to arrive at a satisfactory conclusion about cither. If the government has injured the claimants, and they have a right to recover, either from a desire to recover more than would compensate for the losses sustained, or some other motive unknown to us, the evidence seems to have been skilfully taken with a design to produce confusion, rather than to elicit truth and establish such facts as would properly inform the court how to find a judgment. Itoberts, who, from his long and early residence on the island and his connection with the claimants, is probably best informed about the wood of claimants, says there was “a considerable quantity of wood cut;” “(he has no doubt a large quantity of it was taken for public use.” What one man would call a large quantity, another would call differently. What number of cords of wood there may be in a considerable or large quantity of that article cannot readily be judicially determined. This witness also deposes that if certain other persons have stated that there was a certain quantity of wood used he would believe them, and, doubtless, so would we if their statement was properly in ovidenee. This is a sample of all the evidence in the case; none of it is more definite, and but little of it as much so. Testimony of this character cannot avail parties; we must have proof more satisfactory and conclusive before a judgment can be based upon it. If parties suffer injustice it is because they cannot or will not present such proof as would avert it.
The petitioners state that some of this wood has been paid for; how much they might have shown, and the price received. Without knowing how much has been received, we could not know what, if anything, is due, even if any quantity had been proved. If it is said *323 the government might show this, it may he replied that the compensation may have come from others, since the record shows that others also used the wood. Fairness would more advance the interests of claimants than reserve.
Mr. J. D. McPherson for the claimants.
Mr. W. W. Ketcham, the Solicitor, and Mr. J. B. Kerr, the Deputy Solicitor, for the government.
In this connection, we may refer the claimants to the last clause of the second rule of this court, which'requires that they should, in a case like this, make application for payment at the proper department before seeking relief here. Without this they may not havo a footing in this court.
We might have disposed of this petition upon its averments, but having examined the case with considerable care, and believing it has no merits to authorize a judgment, we thought it best so to inform those interested. The petition* has this singular averment in it: “ John Whitehead and the representative of Simonton are alone interested in this claim from 1821 to July 1, 1824, subsequent to which period the representatives of Fleming and Green have, with them, each an interest of one-fourth.” If the case were properly sustained by evidence, we could not undertake to parcel out a judgment among several who join in. a claim to recover for separate rights and interests.
The conveyances exhibited do not show title in the estate of Green of the interest conveyed to Dixon, (who is not made a party;) the deed from Warner, which we suppose is offered for that purpose, conveys only his own interest. The name of Dixon appears in the deed by recital, Warner claiming to act for him under power of attorney; but he does not execute in the name of Dixon, but for himself. Nor is any power to act for Dixon shown in the record.
We do not consider that the allegations of the petition are sustained by proof, and we therefore dismiss the proceeding.